JUSTICE KOONTZ, with whom JUSTICE HASSELL
joins, dissenting.
I respectfully dissent. In my view, only by placing form over substance can the record in this case support the trial court’s judgment that Ronald L. Willard failed to carry his burden of proof that Amerigo S. and Rose Mary Cappellari, the sole directors and majority stockholders of Moneta Building Supply, Inc. (Moneta), did not discharge their duty of loyalty in compliance with Code § 13.1-690.
Without repeating the generally undisputed facts recited in the majority opinion, it is clear that the record establishes that Mr. and Mrs. Cappellari knew that the transaction in question involved the sale of Moneta’s operating assets to Capps Home & Building Supply Center, Inc. (Capps), a corporation owned by their son, David Lawrence Cappellari. In addition, the record establishes that although Mr. and Mrs. Cappellari were unhappy with their son’s decision to leave Moneta and to open Capps in direct competition with it, they were aware that the acquisition of Moneta’s assets would shorten the time until Capps would become operational and be a source of substantial income for their son. Indeed, this transaction would permit their son to begin operating Capps in Moneta’s real estate with its entire inventory and, thus, become operational immediately upon the close of the transaction without the delays inherent in opening any new business. This benefit to their son is patent.
Under these circumstances, Mr. and Mrs. Cappellari had a conflict of interests in this transaction because they had a “direct personal . . . interest” in that transaction as contemplated by Code *160 § 13.1-691. That statute does not define this term. However, “direct . . . personal interest” is a broad term and, absent restrictive language in the statute, it is not limited to direct financial considerations. Rather, common sense dictates that where a parent is in a position as a director of a closely held corporation to assist his or her child in acquiring the assets of the corporation to the benefit of the child, that director has a direct personal interest in such a transaction as contemplated by Code § 13.1-691.
Notwithstanding this conflict of interests, I do not disagree with the majority’s conclusion that on this record this transaction was not void or voidable under Code § 13.1-691. In the context of that code section, the record supports the trial court’s judgment, and the majority opinion, that the transaction was “fair to the corporation” under Code § 13.1-691(A)(3). This is so because Capps’ offer was at least consistent with the value of Moneta’s assets.
However, Code § 13.1-691 by its express terms merely protects a conflict of interests transaction from being rendered void solely because of a director’s conflict. This code section does not address the potential liability of a director who has a conflict of interests in a particular transaction. That issue is to be resolved under Code § 13.1-690, which requires the director to discharge his duties “in accordance with his good faith business judgment of the best interests of the corporation.” It is in this context that I disagree with the conclusion of the majority opinion, on the particular facts of this case, that because the transaction in question was not voidable because it was “fair” under Code § 13.1-691(A)(3), it necessarily follows that the directors discharged their duty of loyalty in compliance with Code § 13.1-690.
It is undisputed that on November 15, 1996, Capps offered $1.3 million to purchase the assets of Moneta, including its real estate, inventory, equipment, vehicles, supplies, office furniture, fixtures, improvements and the exclusive right to use the trade name “Moneta Building Supply.” Without question, once this transaction was complete Moneta would cease to exist as an operating business. All that would remain to be done would be a distribution of the proceeds of this sale to the shareholders. It is also undisputed that prior to the shareholder approval of this offer, the directors received two offers from Willard. In pertinent part, the last offer contained the following provisions:
I am now offering to pay $600,000.00 more than Capps for the same assets as set forth in the November 15, 1996 Asset *161 Purchase Agreement, and under the same terms an [sic] conditions as set forth therein, provided that the business is run in the ordinary course until closing and the telephone number of the business is included in the assets.
I am making my offer without any real opportunity to investigate in detail the value of the assets of Moneta Building Supply, Inc. I am confident that if given that opportunity, I would further increase my offer substantially. Accordingly, while the foregoing offer remains in effect, I would request 30 days to fully evaluate the assets and determine whether a higher value is appropriate.
There is no suggestion in the record that Willard was not financially able to consummate this offer if it was accepted. Willard’s offer of $600,000 more than the Capps offer was not conditioned upon being granted an additional 30 days in which to review financial records of Moneta in more detail. Thus, the record establishes that the directors had two competing offers to consider, and one in which they had a direct personal interest. Significantly, the latter offer was the lower of the two offers.
In this context, the record does not support the trial court’s conclusion that Mr. and Mrs. Cappellari “engaged in an informed decision making process that . . . produce[d] a defensible business decision.” The record reflects that they never met as directors to consider Willard’s offer. Thus, the record does not support the conclusion that they discharged their duties as directors in accordance with their “good faith business judgment of the best interests of the corporation” as contemplated by Code § 13.1-690. Rather, the record establishes that the directors preferred their son to be able to purchase Moneta’s assets and that they engaged professional advice solely to shape a process under Code § 13.1-690 to accomplish that end. This was mere form over substance.
While I agree with the majority that Mr. and Mrs. Cappellari were not required to accept Willard’s offer merely because it maximized the purchase price and that they were entitled to consider not only the quantity of the offer but also the quality of the offer, the record simply does not support the conclusion that this was done. Moreover, because of their direct personal interest in the Capps transaction, it is clear that they were not exercising good faith business judgment because all their efforts were directed at upholding the *162 Capps offer to the exclusion of any consideration of the Willard offer. Under these circumstances they were not entitled to the protection of Code § 13.2-690(C) and they failed to discharge their duty of loyalty in not considering the offer that would maximize the purchase price for Moneta’s assets.
For these reasons, I would reverse the judgment of the trial court and remand this case to the trial court for a determination of what damages, if any, Willard might establish in a new trial limited to that issue.